# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| In re:  Case No. F07-00645-DMD<br><br>GEORGETTE OKRAY and<br>FREDDIE OKRAY,<br><br>             Debtors. | Chapter 13<br><br>**Filed On**<br>**9/30/08** |
| GEORGETTE OKRAY and<br>FREDDIE OKRAY,<br><br>       Plaintiffs and Counterclaim<br>       Defendants,<br><br>    v.<br><br>ALLEN L. DENNIS and<br>DONNA L. DENNIS,<br><br>       Defendants and<br>       Counterclaimants. | Adversary No. F08-90010-DMD |

## MEMORANDUM DECISION

This is an action for damages and other relief arising out of a contested foreclosure. The defendants have filed counterclaims. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B) and (C). This court has jurisdiction over the dispute in accordance with 28 U.S.C. § 1334(b) and the district court's order of reference. I find in favor of the plaintiffs and against the defendants.

Background

Plaintiffs Freddie and Georgette Okray have a home in North Pole, Alaska. They purchased a second property, a dilapidated, unfinished cabin, from the defendants, Allen and Donna Dennis. This property was located in Salcha, Alaska, a small community about 40 miles south of Fairbanks. The Okrays first made payments of roughly $500.00 a month to the Dennises until they had accumulated a credit of $9,158.52 which was applied as a down payment for the purchase. A closing on the purchase took place on October 15, 2001. The total purchase price was $65,000.00. At the time of the purchase, all parties understood that the cabin on the property was in poor condition and uninhabitable. The property was sold "as it presently is." No warranties as to condition or habitability were given by the sellers. The defendants financed the purchase for the plaintiffs. The plaintiffs executed a note in the principal sum of $55,841.48, which accrued interest on the unpaid balance at the rate of 10% per annum, and a deed of trust in favor of the defendants. The deed of trust was recorded on October 17, 2001.

When the Okrays purchased the property, it had no power or running water. The Okrays didn't use the premises for living space, nor did they make improvements to it. They did use the premises for storage. Over the years they moved used furniture, mattress sets, building materials, clothing, toys and miscellaneous possessions to the Salcha property for storage. The Okrays started getting behind on their payments to the Dennises, however. The defendants commenced a non-judicial foreclosure and sent a notice of default and sale

to the plaintiffs at several different addresses. The notices were dated June 16, 2006. The foreclosure sale was scheduled for September 20, 2006, but it never occurred.

Before the non-judicial foreclosure was initiated, in the spring of 2006, the Dennises became concerned about their collateral. Donna Dennis went to the Salcha property with her sister-in-law, Rebecca Symens, to check on its condition. She was concerned with what she saw. Rebecca Symens's son, Jeremy, agreed to stay at the site with his wife and child to safeguard the premises. They had a lot to do to make the place livable. Rebecca, Jeremy, and others made several improvements to the property. They built a kitchen and a bathroom. They repaired a well that brought running water to the site. They also took the Okrays' possessions and placed the bulk of them outside the cabin. Some of the items were placed in a chicken coop. Some items were placed on the ground and partially covered with tarps. Other items were placed outside the cabin and bulldozed into a pit which had been dug by a prior owner for use as a possible basement to another residence.

The Okrays' daughter noticed some activity at the site, and called her parents. They contacted the troopers and went to the premises with them on July 22, 2006. Georgette Okray took pictures of what she saw. The plaintiffs recovered possession of the property on August 8, 2006 through a stipulation with counsel. The parties pursued their state court remedies. The Okrays filed for chapter 13 relief on December 7, 2007, and this adversary proceeding ensued.

Analysis

The Okrays claim the Dennises converted their personal property and seek compensatory damages in excess of $100,000.00. Conversion is "an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel."[1] To establish a conversion claim, a plaintiff must prove that it had a possessory interest in the property, that the defendant intentionally interfered with the plaintiff's possession, and that the defendant's acts were the legal cause of the plaintiff's loss of property.[2]

I find that the Dennises converted the Okrays' property. Acting through their agents, Rebecca and Jeremy Symens, the defendants intentionally interfered with the plaintiffs' possession of the realty and the chattels being stored there. The Dennis's acts were the legal cause of the plaintiffs' loss of property. The plaintiffs are entitled to recover the full value of the chattels that were destroyed or damaged by the defendants. Full value, however, does not mean that the plaintiffs are entitled to recover the value of their possessions when new. This would constitute a windfall. Full value under the circumstances means that the plaintiffs are entitled to recover as damages the value of the property in its used and stored condition at the time it was converted.

---

[1] *Dressel v. Weeks,* 779 P.2d 324, 328 (Alaska 1989), *citing McKibben v. Mohawk Oil Co., Ltd.*, 667 P.2d 1223, 1228 (Alaska 1983) (quoting *Restatement (Second) of Torts* § 222A (1965)).

[2] *Silvers v. Silvers,* 999 P.2d 786, 793 (Alaska 2000).

The plaintiffs contend that their personal property was very valuable. No doubt they place a premium on the items because they were family heirlooms that reminded them of earlier days. The defendants, on the other hand, viewed the items without such sentiment. From their standpoint, the plaintiffs' personal property was simply junk that had no real value. In determining damages, I have not adopted either party's viewpoint in total. My findings regarding the plaintiffs' personal property damage claims are annexed hereto as Exhibit "A" and incorporated by reference. Damages total $9,044.26.

I have some general comments regarding damages. With regard to the items of used furniture that were destroyed or damaged by the defendants, I have taken a steep discount from the damage amounts claimed by the plaintiffs. Used furniture does not command the premium sought by the plaintiffs as damages. Nor do the used dog mushing gear or the sporting goods. My discount has not been as sharp for appliances and some building materials, as those items tend to retain more value over time than the used furniture or sporting goods.

The plaintiffs are not entitled to any damages for "floor and vinyl repair." The plaintiffs bought the home "as is." The cabin came with wood floors and the plaintiffs did not install any flooring on the premises. The fact that the defendants did a poor job of installing vinyl does not give rise to a claim. There was no conversion of flooring items and the plaintiffs' claim for $3,553.00 for floor and vinyl repair will not be allowed.

Similarly, the plaintiffs' claim for kitchen cabinet replacements has no merit. The cabin had no cabinets when the plaintiffs purchased it. The fact that the plaintiffs don't like the style of cabinets which the defendants installed is no basis for an award of damages. The damage claim of $3,471.00 for kitchen cabinet replacement will be disallowed in full. However, the plaintiffs' claim for damages for the oak kitchen cabinets they had stored on the premises will be allowed, but in a reduced amount as reflected on Exhibit "A."

The plaintiffs seek to recover $33,277.50 for damage caused to the yard around the cabin by Jeremy Symens. Jeremy took a bulldozer and plowed a substantial portion of the plaintiffs' yard into a large hole. He also destroyed the framework for a greenhouse and wooden boxes used for gardening which were located on the property. I concur with the reference to *Corpus Juris Secundum* cited by the plaintiffs. "A mortgagee in possession of the mortgaged premises is liable for waste or gross mismanagement or wrongful or tortious acts which injure the property."[3] As a general rule, "the mortgagee must preserve the estate in as good condition as that in which he received it,"[4] and is responsible for loss caused by his "wilful default or gross neglect."[5]

The defendants are responsible for the acts of their agents in bulldozing the property. But what are the reasonable damages for such actions? Mrs. Okray has obtained

---

[3] 59 C. J. S. *Mortgages* § 321 (Thomson Reuters/West 2008).

[4] *Barnard v. Paterson,* 137 Mich 633, 634, 100 N.W. 893 (Mich. 1904).

[5] *Fidelity Trust Co. v. Saginaw Hotels Co.,* 259 Mich. 254, 259, 242 N.W. 906, 908 (Mich. 1932).

6

bids from two Fairbanks landscaping firms for restoration of the premises. The bids came in at $44,000.00 and $40,000.00. She reduced this amount to $33,277.50.[6] Even with this reduction, I view this portion of the plaintiffs' damage claim as unreasonable. This is a modest cabin in Salcha, not a home in an urban area such as Anchorage or Fairbanks. It is closer to bush Alaska than an urban area. The damage caused by the bulldozing took place on one day. While it may take a day or two to spread some topsoil, smooth the driveway and re-excavate the basement area, I find that this can be done for much less than the amount claimed by the plaintiffs. I conclude that damages of $17,500.00 should adequately compensate for any harm Jeremy Symens and his bulldozer caused to the plaintiffs.

The plaintiffs have also requested punitive damages against the defendants. I don't think punitive damages are warranted in this case for several reasons. First of all, the Okrays were in substantial default of their payment and insurance obligations to the defendants and were not residing on the premises at the time the defendants assumed possession of the property. Second, the defendants spent considerable time and money attempting to fix up the cabin and make it habitable. While the Okrays may dislike the improvements, they are nonetheless now living on the premises and have received the benefit of the improvements. Further, the defendants won't be reimbursed for their improvements to the property. In my view, that is punishment enough for their actions in this case.

---

[6] Pls.' Ex. 13.

7

The defendants have filed counterclaims for negligence, trespass, conversion and fraud. I find that these counterclaims have no merit. They will be dismissed from this action, with prejudice.

The plaintiffs shall recover compensatory damages in the sum of $26,544.26. This amount will be credited against the defendants' secured Proof of Claim No. 15. Because state law governs the issues that were determined in this proceeding, the plaintiffs, as prevailing parties, are also entitled to recover their reasonable attorney's fees and costs as provided under Rule 82(b) of the Alaska Rules of Civil Procedure.[7] Applying the formula found in Rule 82(b), reasonable attorney's fees total $5,144.44. Costs will be taxed by the Clerk of Court following application by the plaintiffs.

Conclusion

The plaintiffs have prevailed on their first and second causes of action in this proceeding. On their claim for conversion, they will recover compensatory damages in the sum of $26,544.26. This sum, after entry of final judgment, will be credited against the defendants' secured claim. A continued hearing will be held on the plaintiffs' objection to the defendants' claim, to determine the allowed amount of Proof of Claim No. 15.

The plaintiffs' third cause of action, for an injunction, will be dismissed as moot. An order conditionally denying the defendants' motion for relief from stay has been

---

[7] *Holiday Mobile Home Resorts v. Wood (In re Holiday Mobile Home Resorts),* 803 F.2d 977, 979 (9th Cir. 1986).

entered in the main case.[8] The plaintiffs' count for punitive damages will also be dismissed, but with prejudice. The defendants' counterclaims will be dismissed, with prejudice, as well.

Appropriate orders and judgments will be entered, consistent with this memorandum decision.

DATED: September 30, 2008.

BY THE COURT

/s/ Donald MacDonald IV
DONALD MacDONALD IV
United States Bankruptcy Judge


Serve:   E. LeRoy, Esq. (for plaintiffs)
T. Wickwire, Esq. (for defendants)
P. Gingras, Adv. Case Manager


09/30/08

---

[8] Docket No. 44, entered Apr. 21, 2008, in Main Case No. F07-00645-DMD.

9

Exhibit "A"

| | Plaintiffs' Damage Item | Plaintiffs' Cost to Repair | Plaintiff's Cost to Replace | Fee | Damage Allowed |
|---|---|---|---|---|---|
| | Itemized List of Damages-Personal Property | | | | |
| 1. | Light Blue with flowers Sofa | | $ 1,299.00 | | $ 260.00 |
| 2. | Light Blue with flowers Chair | | 869.00 | | 164.00 |
| 3. | Brown Love Seat | | 1,249.00 | | 250.00 |
| 4. | 2 Red Foam Chair | | 50.00 | | 10.00 |
| 5. | Antique Military Dresser | | 1,025.00 | | 205.00 |
| 6. | Full Size Box Spring | | 149.00 | | 10.00 |
| 7. | Full Size Box Spring | | 149.00 | | 10.00 |
| 8. | Full Size Mattress | | 282.00 | | 20.00 |
| 9. | Antique Sewing Machine Cabinet | $ 565.00 | | | 20.00 |
| 10. | Upholstery Inspection & Photo Fee | | | $ 135.00 | -0- |
| 11. | Well Repair (wire repair) | 227.50 | | | -0- |
| 12. | Floor and Vinyl Repair | | 3,553.00 | | -0- |
| 13. | Yard Damage Estimate[9] | 33,277.50 | | | --- |
| 14. | Yard Damage Estimate Fee | | | 325.00 | --- |
| 15. | Kitchen Cabinets Replacements | | 3,471.00 | | -0- |
| 16. | | | | | |
| 17. | Oak Kitchen Cabinets | | 1,445.00 | | 290.00 |
| 18. | 16' Custom Diamond Willow Rail | | 200.00 | | 40.00 |
| 19. | Wood Burning Stove Door Broken | 80.00 | | | |
| 20. | Hot Water Heater Damaged | | 479.00 | | -0- |

---

[9] The yard damage estimate and the yard damage estimate fee will be covered separately in the memorandum decision.

Page -1-

| Plaintiffs' Damage Item | | Plaintiffs' Cost to Repair | Plaintiffs' Cost to Replace | Fee | Damage Allowed |
|---|---|---|---|---|---|
| 21. | Toilet Broken | | 148.00 | | 30.00 |
| 22. | Family Photos Missing (pain & grief) | | 500.00 | | 250.00 |
| 23. | Dog Mushing Snow Hook Missing | | 69.95 | | 14.00 |
| 24. | Bunk Beds Missing (2 sets) | | 588.00 | | 118.00 |
| 25. | 5 Fishing Rods and Reels (Salmon) | | 439.00 | | 90.00 |
| 26. | 2 Pair of Skis | | 699.98 | | 140.00 |
| 27. | 4" ASB Black Septic Pipe | | 51.00 | | 10.00 |
| 28. | Vinyl Counter Top 33x25 | | 34.00 | | 7.00 |
| 29. | Gas Stove | | 589.99 | | 250.00 |
| 30. | Washer | | 379.00 | | 175.00 |
| 31. | 4 Post Mahogany Colored Bed | | 819.00 | | 165.00 |
| 32. | Damage to Lower Room Door | | 385.00 | | 200.00 |
| 33. | Cleaning House Inside | | 400.00 | | -0- |
| 34. | Cleaning Trash left in the Yard 24 hours @$50 per hour | | 1,200.00 | | -0- |
| 35. | Replace Wood Burning Stove Hearth Platform | | 399.00 | | 40.00 |
| 36. | China Cap Smoke Stack Missing | | 80.99 | | 17.00 |
| 37. | Pine Wood Cabinet with towel holder Mold Damaged | | 162.00 | | 32.00 |
| 38. | Wicker Laundry Baskets missing | | 6.99 | | 6.99 |
| 39. | Wicker 2-Seater Bench Seat Missing | | 239.00 | | 50.00 |
| 40. | Rocker Stink of Dog and Cat need Cleaning | | 25.00 | | -0- |
| 41. | Published Writing Manuscript (Intent to Inspire) Missing | | 352.00 | | 352.00 |
| 42. | Unpublished Writing Manuscripts Missing (Sentimental) | | 500.00 | | 100.00 |

| | Plaintiffs' Damage Item | Plaintiffs' Cost to Repair | Plaintiffs' Cost to Replace | Fee | Damage Allowed |
|---|---|---|---|---|---|
| 43. | Medical Records Weather Damaged (Found sitting out in a box) | | 35.00 | | 35.00 |
| 44. | Children Home School Records Missing | | 500.00 | | 250.00 |
| 45. | Black Barbie Doll Collection 1994-99 | | 79.00 | | 79.00 |
| 46. | Sports Card Collection over 1000 cards missing | | 50.00 | | 50.00 |
| 47. | Dog Mushing Harnesses | | 399.00 | | 80.00 |
| 48. | Mushing Team Mainline | | 205.00 | | 41.00 |
| 49. | 4 Doors in Door Frames @235 each | | 940.00 | | 290.00 |
| 50. | 4 Double Windows & Frames | | 572.00 | | 276.00 |
| 51. | 2 Single Arctic Windows & Frames | | 288.00 | | 144.00 |
| 52. | Broken Front Door and Frame | | 144.00 | | 144.00 |
| 53. | Replace Lock Cut Off Front Door | | 9.46 | | 9.46 |
| 54. | Replace 2 Locks Cut Off the Back door | | 17.97 | | 17.97 |
| 55. | Destroyed Side Entry Door | | 144.00 | | 144.00 |
| 56. | 2 Front Dead Bolt Locks Missing | | 99.46 | | 99.46 |
| 57. | Hair Braiding Magazine Collection | | 250.00 | | 125.00 |
| 58. | Unauthorized remodel of kitchen | 3,471.91 | | | -0- |
| 59. | Repair damaged Vapor Barrier in the Ceilings | 3,500.00 | | | 2,500.00 |
| 60. | Missing 8 Sheets of Sheetrock | | 88.00 | | 88.00 |
| 61. | Damaged 4 Bags of Concrete | | 26.08 | | 26.08 |
| 62. | Repair Bathroom Plumbing | 500.00 | | | -0- |
| 63. | | | | | |
| 64. | Mushing Pictures of Faren and Joe Reddington | | 20.00 | | -0- (Included in 22) |
| 65. | Mushing Pictures of Faren and Susan Butcher | | 20.00 | | -0- (Included in 22) |

Page -3-

| Plaintiffs' Damage Item | | Plaintiffs' Cost to Repair | Plaintiffs' Cost to Replace | Fee | Damage Allowed |
|---|---|---|---|---|---|
| 66. | Rent from Family Tenants for 3-Months Rent @ 500 per month | | 1,500.00 | | -0- |
| 67. | Vinyl Counter Top 33x25 | | 44.00 | | 34.00 |
| 68. | 3 ea Vinyl Counter Tops 24x26 | | 102.00 | | 102.00 |
| 69. | Vinyl Counter Top w/double Stainless Steel Sink | | 59.00 | | 59.00 |
| 70. | Vinyl 24" x 8' | | 60.00 | | -0- |
| 71. | Coat Rack | | 59.00 | | 12.00 |
| 72. | Body Shaping Step Legs Mold Damage | | 69.00 | | 20.00 |
| 73. | 5 Drawer Dresser | | 159.99 | | 32.00 |
| 74. | 2 Custom Door Frames | | 200.00 | | 40.00 |
| 75. | | | | | |
| 76. | 31x24 Pine Cabinet | | 100.00 | | 20.00 |
| 77. | Built-in Book Shelf Unit | | 2,272.65 | | 455.00 |
| 78. | 3 ea 32x80 Closet Doors Mold Damage | | 231.00 | | 60.00 |
| 79. | Wet n Dry Shop Vac - Mold | | 89.99 | | 30.00 |
| 80. | Curtains Missing | | 50.00 | | 10.00 |
| 81. | Curtain Rods Missing | | 20.00 | | 10.00 |
| 82. | 5 Kitchen Cabinets Mold Damage | | 1,248.00 | | 250.00 |
| 83. | 10 Copper Tube ½ " 10' - Pipe | | 185.30 | | 185.30 |
| 84. | Administrative Cost | | | 800.00 | -0- |
| 85. | Travel Cost | | | 700.00 | -0- |
| 86. | Range Hood | | | | |

Total Damage Allowed - Personal Property          $9,044.26

Page -4-